Dear Mr. Ware:
You have requested an opinion of the Attorney General in your capacity as legal advisor to the Audubon Regional Library ("Library"), relative to the proceeds generated from advalorem taxes levied by the Parishes of East Feliciana, West Feliciana and St. Helena for the purpose of the maintenance and support of the Library.
The facts giving rise to your inquiry are presented in a letter from Ms. Martha G. Yancy, the Library's Director. Therein, Ms. Yancy states that, in 1963, the Library was established to serve the three parishes enumerated above pursuant to an intergovernmental agreement between said parishes. As a result of this agreement, each of the parishes levied its own separate special ad valorem tax of 2.5 mills for a period of ten years, beginning with the year 1988, for the purpose of the maintenance and support of the Library. The tax was approved by the electorate of each parish.
In 1998 the tax will be placed before the voters of each parish for renewal. The River Bend Nuclear Power Plant will appear on the tax rolls for the first time at the end of 1997, thereby significantly increasing the tax base in West Feliciana. While West Feliciana Parish desires to continue to support the library, it wants to reduce its levy so that the revenues generated will not be disproportionately greater than the revenues generated by the other two parishes.
By way of illustration, in 1996, St. Helena's 2.5 mills will generate approximately $50,000, East Feliciana will produce $96,000 and West Feliciana, $100,000. Should West Feliciana's voters approve a renewal at the same 2.5 mill level, the tax revenues generated thereby would approach $500,000 to $600,000 per year — (i.e., disproportionately greater than the proceeds generated by a 2.5 mill levy in St. Helena and East Feliciana). Thus, a new/reduced millage in West Feliciana, along with the 2.5 mill renewal in the remaining two parishes would result in each parish contributing its fair share to the operation of the Library.
If East Feliciana and St. Helena were also required to reduce their millages, the revenues generated therefrom would be almost negligible, and would result in West Feliciana being the sole support of the Library.
Given the above facts, you ask whether the Library and/or the parishes, in globo, constitute a multi-parish district and, if so, must each parish levy the same millage rate when the taxes become subject to renewal in 1998.
In answer to your question, we refer you to R.S. 25:211 which provides, in pertinent part, the following:
 "The governing authority of any parish . . . may of its own initiative create, establish, equip, maintain, operate and support a public library in such parish . . . . Provided that two or more parishes may join in the establishment of a public library to be supported and maintained by them jointly in the proportions as may be determined by the police juries of the respective parishes or other governing authority; . . . and provided also one parish . . . may contract with another parish . . . to furnish library service upon such terms and conditions and for such considerations as the governing authorities concerned may stipulate and agree by written contract pursuant to ordinances duly passed by them." (Emphasis added.)
R.S. 25:217 provides for the maintenance and support of the Library as follows:
 "A. The governing authority of a parish may . . . submit to the property taxpayers a proposition to vote a special tax, as provided by the constitution and laws of this state, for the maintenance and support of such public library and its branches . . . .
 B. In all cases where a public library is jointly established and maintained, each parish . . . concerned shall contribute its prorata or equitable share of the costs and expenses. Each such corporation shall be as nearly as possible equally represented on the board of control, and the presiding officer of each governing authority shall be an ex-officio member of the board."
We also draw your attention to R.S. 33:1321, etseq., which comprise the statutory provisions relating to intergovernmental functions. By law, these statutes must be construed liberally to the end that through the use of the agreements authorized therein, greater economy and efficiency in the operation of local services are encouraged. Section 33:1324
provides, in pertinent part, the following:
 "A. Any parish, municipality or political subdivision of the state, or any combination thereof, may make agreements between or among themselves to engage jointly in the . . . improvement, the promotion and maintenance of any undertaking or the exercise of any power, provided that at least one of the participants to the agreement is authorized under a provision of general or special law to perform such activity or exercise such power as may be necessary for completion of the undertaking. Such arrangements may provide for the joint use of funds, facilities, personnel or property or any combination thereof
necessary to accomplish the purposes of the agreement, and such agreements may include but are not limited to activities concerning:
 * * *
 (5) Recreational and educational facilities, such as playgrounds, recreation centers, parks and libraries." (Emphasis added.)
The statutory provisions relative to the uniformity of adjusted millages in multi-parish taxing districts are found in Act No. 617 of the 1977 Regular Session of the Louisiana Legislature, R.S. 33:9005.2 and R.S. 47:1925.4. In general, they require each taxing district whose jurisdiction encompasses more than one parish to adjust their millage so that the adjusted millage is uniform throughout the district. We are of the opinion that these provisions are not applicable to the Library and/or the millages levied by the three parishes in question.
Initially, it should be noted that the statutes authorizing the establishment of the Library do not constitute same as a special district, taxing or otherwise. The Library is not a creature of the Legislature, but rather an extension and/or agency of the parish or, as in this case, three parishes. Further, the applicable statutes do not designate the Library and/or its Board of Control as a corporate body or a body politic, nor are they granted such other powers usually associated with political subdivisions, including the power to sue and be sued, the power to incur debt and issue bonds, the power to contract, the power to adopt ordinances and the power to levy taxes. In accord is Attorney General Opinion No. 83-766.
In addition, we find no prohibition against the three parishes levying diverse millages for their respective contributions to the operation of the Library. To the contrary, R.S. 25:211, 217(B) and 33:1324 expressly provide for the establishment and operation of libraries and the funding therefor, jointly, inthe proportions as may be determined by theparticipants.
In summary, it is the opinion of this office that neither the Library, nor the three parishes which jointly established the Library, constitute multi-parish districts so as to require the levy of a uniform millage in all three parishes for the operation of the Library. Accordingly, each parish may levy and/or renew its millage at a rate deemed appropriate for purposes of the joint operation of the Library.
Should you have any additional inquiries concerning this matter, please do not hesitate to contact me.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
By: ______________________________________
 ROBERT E. HARROUN, III
Assistant Attorney General
RPI/Rob III,/cla
cc: Paulette Jackson
Date Received:
Date Released:
Robert E. Harroun, III Assistant Attorney General